Pomeroy v. Pomeroy.

---

EUGENE C. POMEROY et al., appellants,

*v.*

JOSEPHINE POMEROY et al., respondent.

Partition of land will not be delayed until the establishment, on an accounting in a pending suit in equity, of the amount of a possible lien in favor of one of the co-owners upon the shares of the others.    Such lien will attach to the divided shares, and rights acquired *pendente lite* will be subject thereto.

On appeal from an order of the chancellor confirming partition of lands under a decree advised May 20th, 1895, by the late Vice-Chancellor Green, who delivered the following opinion :

This bill is filed to partition the real estate of which George Pomeroy died seized.

Mr. Pomeroy died in the year 1880, owning very large tracts of land in Morris, Union and Hudson counties, including a homestead at Madison, enclosed by a park with a stone wall around it, called " the Homestead lot or tract."

His family and heirs-at-law consisted of his wife and his four children, George P., Edward, Julia and Josephine.

His will was duly probated in Morris county and letters testamentary issued to Edward Pomeroy and Alfred Mills, who were appointed in the will as his executors.   The provisions of the will were substantially—

*First.* The executors were authorized to deliver to the New York Life Insurance and Trust Company securities to the amount of $50,000, to be held in trust for the benefit of his wife during her life, and upon her death to divide the securities and proceeds equally among his children Edward, Julia and Josephine.   (His widow died February, 1883.)

*Second.* Securities to the amount of $30,000 were directed to be deposited with the same company, to be held in trust for the benefit of his son George P. during his life, and at his death such securities and the proceeds thereof were also to be divided among the said children Edward, Julia and Josephine.

*Third.* The testator directed that no partition or sale of his real estate should be made until his executors should have sold real estate to the amount of at least $100,000, and directed the proceeds of the first of such sales to be deposited with the same company until the amounts should reach that sum, which was to be held and invested for the benefit of his daughters, Julia and Josephine, with instructions to collect and pay to each of them the interest on $50,000, with certain directions in the case of the death of either of them.

*Fourth.* The residue of the estate, aside from some immaterial

legacies, was devised to his three younger children, Edward, Julia and Josephine, in equal parts. It was provided that the homestead at Madison, New Jersey, should be kept up by the three younger children as long as they and the widow could live harmoniously &c.

The son George P. Pomeroy was living in Europe. Edward Pomery took upon himself the main management of the estate and the sale of the real estate to procure the trust funds of $100,000 for the daughters and of $30,000 for George P. Pomeroy.

Disputes arose between Edward Pomery and sisters some time about 1884, the sisters claiming that he had not paid over to them their proper share of the estate, and they commenced suit in New York against him, pending which suit he died, leaving a will by which he gave all his property of every kind and nature, real as well as personal, to his brother George P. Pomeroy.

George P. Pomeroy, who had been cut off from the residuary estate of his father by his father's will, was thus, by the will of his brother Edward, put in Edward's place.

In 1887 an agreement was entered into with reference to the estate between George P. Pomeroy and his two sisters, Julia and Josephine.

George P. Pomery died in November, 1887, leaving all his property in the first instance to his son, Eugene C. Pomeroy, an infant, who is made a party to this suit, the estate being limited over to other persons, who are also made parties. Mrs. George P. Pomeroy died before her husband.

The sisters, Josephine and Julia, subsequently claimed that the agreement referred to had been signed by them under a misapprehension and in fraud, and declined to carry it out, and Frank R. Chandler, who had been appointed administrator *de bonis non* of Edward Pomeroy's estate and who was also the executor of George P. Pomeroy's estate, filed a bill in the United States circuit court for the district of New Jersey to enforce that agreement. Julia Pomeroy having, after her father's death, married William Foster Morrison, the defendants to the suit were Josephine Pomeroy, Julia P. Morrison and William F.

Morrison. While that suit was pending Miss Josephine Pomeroy filed her bill in this court for the partition of the real estate in New Jersey of which her father died seized, and, as I understand, similar actions were commenced in the courts of New York and Missouri, in which states her father had died seized of real estate. After the partition bill was filed in this suit, pending the suit by Chandler to enforce the agreement, Judge Bradley granted therein a temporary injunction or stay of these partition suits pending the argument in that court. The cause was subsequently tried before Judge Bradley, who set the agreement aside. The case then went, by appeal, to the supreme court of the United States and the decree of Judge Bradley was reversed and the agreement held to be a valid agreement. *143 U. S. 318.* After the injunction had been granted by Judge Bradley, Mr. Chandler appeared in the New Jersey suit with a plea setting up the proceedings in the United States court and also that the injunction had been granted therein. That plea remained without hearing or decision until after the decision of the United States supreme court sending back the original suit to the circuit court. Once, the case being remitted to the circuit court by the supreme court of the United States to enforce the agreement, the case came on for hearing before Judge Green, and a decree was entered in compliance with the decision of the supreme court. The matter was referred to William L. Dayton, Esq., as master, to take and state the account of the transactions between the parties, and the master has since that time gone on with the accounting, which, it was represented on the argument, was practically completed. After the remission of the cause to the circuit court, counsel of Miss Pomeroy moved to dissolve the injunction restraining her from proceeding with the partition suits in the New Jersey, New York and Missouri courts. On this motion Judge Green filed this memorandum:

" On motion to dissolve injunction restraining prosecution of suits for partition &c. Memorandum.

" When Mr. Justice Bradley allowed an injunction to go against the defendants, restraining them from prosecuting certain suits for the partition of real estate in which the complainants and defendants were interested as tenants in

common, and which were pending in the courts of New Jersey, New York and Missouri, he stated in effect that such injunction was to be temporary only, and was intended rather to prevent an embarrassment which might arise from a conflict of jurisdiction during the pending litigation seeking the specific performance of the agreement which has now been upheld by the supreme court as a good and valid agreement. He expressly said that in enjoining those partition proceedings at that time, it was not the intention of the court to permit the suit then under consideration by him to be converted into a suit for the partition of the lands in question. To these remarks of the learned justice I only add that I am unable to understand how lands situate in New York and Missouri can be legally partitioned by a court which has no jurisdiction over them.

" The parties complainant and defendant are, it is admitted, tenants in common of large estates, situate in those different states. Some of these tenants in common desire a partition of these lands in accordance with law. This is an undoubted right of a tenant in common, and no reason has been presented to the court of sufficient weight to cause any interference with such right, now the object of the injunction granted by Mr. Justice Bradley has been fully attained. It was avowedly to be temporary only in its duration. It ought not longer to be held over the heads of the defendants, barring them from asserting and enforcing their clear rights. No good purpose could be thereby accomplished, and the causes which warranted its original issue no longer exist. The motion to dissolve is granted."

And an order was entered April 3d, 1894, in accordance therewith, dissolving the injunction.

Julia P. Morrison, having been divorced from her husband, William Foster Morrison, was subsequently married to George P. Newell, who was made a party to the suit, and the plea heretofore mentioned, filed by Mr. Chandler, was withdrawn.

Mr. Chandler was then appointed guardian for the infant defendant, and filed an answer, substantially, after admitting the undisputed facts of the case, setting out the will of George Pomeroy and also of Edward Pomeroy, and also setting out the agreement executed between the two sisters and their brother, and the proceedings in the circuit court of the United States, and the suggestion that this suit in partition of New Jersey property ought to be stayed because of the pendency of the suit in the United States court. The case was then set down for hearing on bill and answer.

There is practically no dispute between the parties as to the facts of the case, viz., that there is real estate in this state, as

well as in New York and Missouri, of which they are tenants in common.  Counsel for the guardian of the infant, however, now applies to the court on behalf of the infant to have the proceedings in this case further stayed, on the ground that it is for the interests of all the parties, and especially of the infant, that all of the real estate in the three states should be partitioned in one proceeding.  What that proceeding was to be, what court has jurisdiction to that extent, or how it was to be effectively accomplished, was not very clearly developed.  The supreme court of the United States, in the case of *Chandler* v. *Pomeroy, 143 U. S. 318,* expressly avoided the expression of an opinion whether in that suit the court might proceed to a partition of the real estate.  And on remitting it to the circuit court, Judge Green remarked that he was unable to understand how lands situated in New York and Missouri could be legally partitioned by a court which had no jurisdiction over them.

It would appear to be the right of one tenant in common, in the absence of any restrictions upon the title, to have partition of the real estate, and this right should not be denied or postponed in enjoyment simply because the interests of some one or more of the other tenants in common might be advanced or improved by delay.  The only suggestion made by counsel upon this point, which is entitled to consideration as a reason, was that the accounting before the master had not proceeded to a report, and it was not known as yet how the indebtedness between the parties would stand.  But as suggested on the argument, this furnishes no obstacle to the court proceeding in partition, for if the amount due from one tenant in common to the other, is a claim or lien upon such daughter's share in the real estate, the decree of the court can, and in fact always does, transfer, so to speak, the lien from the undivided shares to the share of the party as set off.

The next ground urged for the postponement is that, by a fair construction of the agreement made between George P. Pomeroy and his sisters, the real estate is not to be partitioned until a settlement of the accounts between them.

Confessedly the agreement does not expressly contain any such

provision, nor does it seem to me that it is open to that construction on a fair reading of it.

It is dated April 13th, 1887, after reciting in substance that Edward, at the time of his death, was indebted to Julia, Josephine and George P., or some one or more of them, to an unknown amount; that the parties desire to settle the estate of their father and their brother Edward without litigation, and to adjust the claims of the parties against Edward's estate, suppressing and terminating the suits brought against him and pending when he died, and that they desired to vacate the provisions of their father's will, in order to be equally charged with and equally to share in the estates of both George Pomeroy and Edwin Pomeroy, and to settle said estates and determine the value of the shares of each of said heirs, they agreed, in substance, as follows: (1) The remainder of the estate of George Pomeroy, the father, was to be equally divided among the three living children— Julia, Josephine and George P. (2) This division to be made as of the date of the death of the father. (3) To arrive at the interest to which each should be entitled at the date of the agreement, each was to be charged with the amount he or she had received, with six per cent. interest from the date of the receipt to the date of the document, payable annually. (4) The estate of Edward was to be divided and distributed equally between George P. and his two sisters, after payment of his just debts and the specific legacies of $6,500. (5) In case it should be found that the personal property of said George or Edward could not be equally distributed in kind, then so much as might be necessary be sold and the proceeds divided. (6) The real estate of said George and of said Edward, wherever situated and by whomsoever held, to be conveyed by good and sufficient deeds, so that each of the three parties should hold an undivided third thereof as a tenant in common with the others. (7) In the division of the said estate, the proceeds or revenue to be derived from the trust funds for the benefit of George P., Julia and Josephine, created by the will of their father, to be treated as a general fund and divided equally between them, and, so far as it lay in their power, the parties agreed that the said funds should be considered and be the general fund of the parties.

Pomeroy v. Pomeroy.

The partition of this real estate cannot, in any way, interfere with the carrying out of this agreement, unless it might be that the indebtedness of one to the other should be a charge upon that other's undivided interest, which can and will be protected as before suggested.   It would seem that a partition of the real estate between these tenants in common would be carrying the terms of the agreement into effect, rather than interposing any obstacle thereto.

The other ground urged by the counsel is that this court should not proceed to partition this estate in obedience to the rule that he who seeks equity must do equity, and that it will be inequitable to permit two sisters to have partition of their real estate until all the terms of the agreement shall have been carried into effect by the report of the master and a compliance with the decree of the court thereon.

As was very forcibly and clearly stated by the opposing counsel, this rule applies only to acts of the party with reference to the subject-matter of the suit, and that it does not apply to what has been done, or what has not been done, by the party with reference to some outside matter, but, independent of that position, I see no merit whatever in the objection.   As stated before, there is nothing in the agreement which, in law, equity or morals, would interfere with these parties instituting and proceeding with this suit to have partition of the real estate.

In my judgment, no good ground has been shown why the complainant and her sister should be further delayed in their proceedings to have their respective shares of their real estate in New Jersey set off to them.   And the testimony having been taken which clearly establishes that these are now held by these parties as tenants in common, I will advise the usual decree for the appointment of commissioners.

*Mr. William B. Guild,* for the appellants.

*Mr. Abram Q. Garretson,* for the respondents.

The opinion of the court was delivered by

COLLINS, J.

The partition reported by the commissioners has not, in the judgment of any member of this court, been successfully impugned; but some of my brethren think that any partition should be stayed until final determination on the accounting in the suit in the federal court referred to by Vice-Chancellor Green. If a majority of the court held that opinion, it would be matter of regret that the objection had not been presented *in limine* by an appeal from the decree appointing commissioners. It savors of disingenuousness to experiment with a partition at very considerable cost to the co-owners and then press the objection to having any partition at all, especially in the light of the offer made in the brief filed for appellants, to waive all objections upon condition that the allotment reported be changed so as to give the appellants the share awarded to another owner.

The facts of the case were clearly stated by the vice-chancellor, and his reasons for not delaying partition seem to me conclusive. In this connection also, the opinion of the late Mr. Justice Bradley may be profitably read. *Chandler* v. *Pomeroy, 46 Fed. Rep. 533, 545.* His decision that the agreement was not valid was reversed, but the remarks on the subject of partition were not criticised in the supreme court. That tribunal left the matter to be settled by the circuit court after *remittitur*, and when we find that court declining jurisdiction and dissolving its injunction against the chancery partition, it would seem proper that such partition should proceed.

The only reason suggested for delay in severing the common ownership of the parties, and the only reason possible to suggest, is that the accounting of the personal estate may show something due appellants from the other owners, which, under the agreement, may be chargeable on the real estate. The parties have voluntarily divided about $500,000 worth of personal estate. They could very easily have withheld a fund sufficient to make the necessary adjustment, for the margin of difference was well known to all of them. The master's report to the federal court shows a small balance in favor of appellants, but both sides have excepted and no one can tell when the contest will end. It is

not even hinted that the respondents are pecuniarily irresponsible;. indeed, it is perfectly clear that they are possessed of large means.    If the appellants have a lien, either legal or equitable, upon the real estate, it will attach to the divided shares.    *Gen. Stat. p. 2430 § 36 ; Speer* v. *Speer, 1 McCart. 240.*

There will be no more danger from *bona fide* purchasers after partition than before, for in either case any purchase will be *pendente lite.*    Partition simply permits each owner to enjoy his or her share in severalty instead of in common, and I can see no objection to the exercise now of that undoubted right.    The decree and partition thereunder should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, COLLINS, GARRISON, LIPPINCOTT, LUDLOW, BOGERT—6.

